# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

WILLIAM D. BAKER, :

                Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant. :

Case No. 3:09-cv-405

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for supplemental security income SSI benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits

prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 . If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSI in July, 2001, which was denied initially and Plaintiff took no further appeal. (Tr. 13). Plaintiff filed a second application for SSI in September, 2004, alleging disability from February 15, 2004, due to heart disease, problems walking, and asthma. (Tr. 104-07). Plaintiff's application was denied initially and on reconsideration. (Tr. 87-89; 75-77). Administrative Law Judge Steven Templin held a hearing and a supplemental hearing, (Tr. 211-28; 219-54), following which he determined that Plaintiff is not disabled. (Tr. 10-22). The Appeals Council denied Plaintiff's request for review, (Tr. 3-6), and Judge Templin's decision

became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Templin essentially found that Plaintiff has severe impairments, but that they do not, singly or in combination, meet or equal the Listings. (Tr. 17, ¶ 2, Tr. 18, ¶ 3). Judge Templin then found that Plaintiff has the residual functional capacity to perform a range of light work. (Tr. 19, ¶ 4). Judge Templin found further that Plaintiff was able to perform his past relevant work as an adult attendant/aid and as a fast food worker. (Tr. 21, ¶ 5). Judge Templin concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 22).

Plaintiff sought emergency room treatment on April 13, 2004, for complaints of chest pain. (Tr. 116-22). Plaintiff was treated with medication and discharged with the diagnosis of chest wall pain. *Id.*

On September 28, 2004, consulting orthopedist Dr. Brown reported that Plaintiff sustained a fracture of the mid-shaft fibula and a posterior malleolar fracture, that he could not afford to have a cast or cast boot applied, and therefore was being referred to the clinic for conservative treatment. (Tr. 125).

Treating cardiologist Dr. Karim reported on October 11, 2004, that Plaintiff was last seen three years ago, he was known to have dilated cardiomyopathy and hypertension, had been off his medications for several months because of financial reasons, and that he complained of mild dyspnea on exertion and occasional orthopnea. (Tr. 133). Dr. Karim also reported that Plaintiff's chest was clear to auscultation, his heart rate and rhythm were normal, and that an EKG revealed ventricular hypertrophy. *Id.* Dr. Karim noted that Plaintiff's symptoms of mild dyspnea on exertion and occasional orthopnea were related to his dilated cardiomyopathy and mild degree of congestive

4

heart failure which seemed to be compensated at present, that his hypertension was not well-controlled, and that Plaintiff had not been compliant with his medications. *Id.*

On March 22, 2006, Dr. Karim reported that he first saw Plaintiff on June 29, 2001, and last saw him on October 11, 2004, and that on June 29, 2001, his ejection fraction was twenty percent. (Tr. 128-30).

Examining physician Dr. Oza reported on December 28, 2004, that Plaintiff was not taking all of his medications secondary to financial reasons, his cardiac examination was normal, and that his lungs were clear. (Tr. 139-44). Dr. Oza also reported that Plaintiff was morbidly obese, his ranges of motion were full, and that Plaintiff seemed to be fairly well compensated. *Id.* Dr. Oza noted that Plaintiff had a recent right ankle fracture from which he was recuperating and that his ability to perform work-related activities would be accordingly affected. *Id.*

Plaintiff sought treatment in the emergency room on October 21, 2008, after he was involved in a motor vehicle accident. (Tr. 153-74). Plaintiff was treated for a closed head injury and cervical spine strain and sprain and discharged. *Id.*

Dr. Karim reported on September 26, 2006, that Plaintiff had a history of congestive heart failure, dilated cardiomyopathy, and hypertension, and that he had a longstanding history of noncompliance with his medications and follow-up appointments. (Tr. 179). Dr. Karim also reported that he last saw Plaintiff in 2004, that Plaintiff had stopped taking his medications, and that he presented for reevaluation because of increasing shortness of breath at rest, orthopnea, dyspnea on exertion, and uncontrolled hypertension. *Id.* Dr. Karim noted that Plaintiff's blood pressure was 120/88, his heart rate was regular with a soft S4 gallop, his EKG showed sinus tachycardia at a rate of 110 bpm and nonspecific ST segment changes, and that he was in mildly decompensated systolic

congestive heart failure. *Id.*

On November 13, 2008, Dr. Karim reported that Plaintiff's diagnoses were congestive heart failure and dilated cardiomyopathy, that his prognosis was guarded, his ejection fraction was 20%, and that high stress might exacerbate his symptoms. (Tr. 175-81). Dr. Karim also reported that Plaintiff was capable of performing low stress jobs, that he frequently experienced cardiac symptoms throughout the day, and that he was able to walk less than one block, stand/walk for less than two hours, and sit for about two hours. *Id.* Dr. Karim noted that Plaintiff would need to take unscheduled breaks once an hour for a period of fifteen minutes and that he was able to occasionally lift and carry less than ten pounds. *Id.*

Plaintiff sought emergency room treatment on September 15, 2008, for complaints of shortness of breath. (Tr. 184-91). Plaintiff was treated and released. *Id.*

A medical advisor testified at the first hearing that Plaintiff was diagnosed in 2004, with a dilated cardiomyopathy with congestive heart failure and hypertension, that he had a quoted ejection fraction of twenty percent, but that there were not any records that actually measured that value, that he had not been taking all of his medications all of the time basically due to financial reasons, that a diagnosis of dilated cardiomyopathy was unusual in an individual as young as Plaintiff, and that he (the MA) couldn't tell from the record whether Plaintiff's condition had gotten resolved, persisted, or gotten worse. (Tr. 213-16).

A different MA testified at the supplemental hearing that Plaintiff's impairments did not meet or equal the Listings, he had the residual functional capacity in the light level which required occasionally lifting and carrying up to twenty pounds and up to ten pounds frequently and standing and/or walking six hours in an eight-hour workday, and that he should avoid respiratory

6

irritants. (Tr. 222-26). The MA also testified that it was possible that he would change his opinion if he had evidence of Plaintiff's emergency room visits in the past several years due to problems with his heart. *Id.*

After Judge Templin issued his decision, and in support of his request for review, Plaintiff submitted additional evidence to the Appeals Council. (Tr. 192-210). The additional evidence includes records from an apparent hospitalization in early May, 2009, during which time a nuclear myocardial perfusion revealed, *inter alia,* a dilated left ventricular cavity with global hypohinesis and a low ejection fraction of twenty-six percent; a May 29, 2009, report from consulting cardiologist Dr. Kahn in which Dr. Kahn noted that an echocardiogram performed on May 5, 2009, showed an ejection fraction of twenty-five to thirty percent, and that Plaintiff appeared to be at high risk for sudden arrhythmic death and would benefit from AICD [automatic implantable cardiac defibrillator] implantation; and a Statement of Account from Kettering Medical Center which seems to indicate that Plaintiff was hospitalized at that facility August 13-15, 2009. *Id.* That evidence was not before Judge Templin but was submitted to the Appeals Council. However, since the Appeals Council denied Plaintiff's request for review, that evidence is not a part of the record for purposes of substantial evidence review of Judge Templin's decision. *See Bass v. McMahon,* 499 F.3d 506, 512-13 (6th Cir. 2007), *citing, Cline v. Commissioner of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted).

In his Statement of Issues, Plaintiff argues that the Commissioner erred by failing to evaluate non-compliance with prescribed treatment likely to restore the ability to work within a framework of SSR 82-59, failing to find that his obesity was a severe impairment, and by failing to give Dr. Karim's opinion the proper evidentiary weight. (Doc. 10).

7

Contrary to Plaintiff's argument in support of his first Error, the Commissioner did not err by failing to properly analyze his failure to follow treatment according to requirements of Social Security Ruling 82-59 (SSR). The Court notes that Judge Templin considered Plaintiff's failure to follow treatment when he evaluated his credibility. (Tr. 20). However, Judge Templin did not consider Plaintiff's non-compliance in determining whether Plaintiff was disabled. Indeed, he was not required to do so.

The SSR which Plaintiff relies on applies to the failure by individuals who have a disabling impairment and who fail to follow prescribed treatment:

**TITLES II AND XVI: FAILURE TO FOLLOW PRESCRIBED TREATMENT**

SSR 82-59

**INTRODUCTION**: Individuals with a *disabling impairment* which is amenable to treatment that could be expected to restore their ability to work must follow the prescribed treatment to be found under a disability, unless there is a justifiable cause for the failure to follow such treatment. This policy statement discusses failure to follow prescribed treatment, explains in detail the requirements necessary for such a finding, explains the consequences of such action, and illustrates examples of justifiable causes for "failure."

**POLICY STATEMENT**: An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such "failure" be found to be under a disability. (See discussion below for title XVI "blindness" cases.)

Social Security Ruling 82-59 (Nov. 3, 1981)(1982 WL 31384) (emphasis in original).

The Commissioner did not find that Plaintiff has a disabling impairment. Finding that a claimant has a disabling impairment is the necessary trigger for an analysis under SSR 82-59. Because the Commissioner failed to find that Plaintiff was disabled, he was not required to analyze

8

Plaintiff's non-compliance pursuant to SSR 82-59. *See Duverglas v. Commissioner,* No. 3:07cv378, 2009 WL 891767 at *8-9 (S.D. Ohio Mar. 30, 2009).

Plaintiff argues next that the Commissioner erred by failing to find that his obesity is a severe impairment. However, Plaintiff has not identified any evidence which indicates that his obesity resulted in limitations in addition to those which Judge Templin identified.

An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6th Cir. 1985)(citation omitted); *see also, Bowen v. Yuckert,* 482 U.S. 137 (1987).

An ALJ does not commit reversible error in finding a non-severe impairment where the ALJ determines that a claimant has at least one other severe impairment and then goes on with the remaining steps in the disability evaluation, since the ALJ considers all impairments, including non-severe impairments, in determining residual functional capacity to perform work activities. *See, Maziarz v. Secretary of Health and Human Services,* 837 F.2d 240, 244 (6th Cir. 1987).

As noted above, Judge Templin determined that Plaintiff had at least one medically determinable severe impairment. (Tr. 17). Judge Templin then proceeded past step two of the disability evaluation process before he determined at step four that Plaintiff was not disabled. Accordingly, Judge Templin did not commit reversible error by failing to find that Plaintiff's obesity was a severe impairment. *Maziarz, supra.*

Plaintiff's next challenge to the Commissioner's decision is that it is flawed because the Commissioner failed to properly consider Dr. Karim's opinion. In support of his argument, Plaintiff relies heavily on the evidence which he submitted to the Appeals Council, alleging that the additional evidence supports Dr. Karim's opinion. However, as noted above, that evidence was not before Judge Templin and is therefore not a part of the record for purposes of substantial evidence review. Nevertheless, the Court turns to Plaintiff's "treating physician" argument.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security

Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,*582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

>agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In rejecting Dr. Karim's opinion that Plaintiff was so significantly impaired that he would not be able sustain the performance of competitive employment, Judge Templin essentially found that it was not supported by the clinical and laboratory findings or by Dr. Karim's own clinical notes. (Tr. 19).

Although Dr. Karim opined on November 13, 2008, that Plaintiff was able to walk for less than one block, stand/walk for less than two hours, and sit for about two hours, his clinical findings do not support that opinion. For example, on October 11, 2004, Dr. Karim reported that Plaintiff had, at worst, mild dyspnea on exertion and occasional orthopnea, that his heart sounds, rate, and rhythm were normal, and that his mild degree of congestive heart failure was compensated. On September 26, 2006, Dr. Karim reported that Plaintiff's blood pressure was 120/88, his heart rate was regular with, at worst, a soft S4 gallop, and that he was in mildly decompensated systolic congestive heart failure. Additionally, when he reported on November 13, 2008, that Plaintiff was extremely limited, he supported his opinion primarily with Plaintiff's subjective complaints and not

objective clinical findings.

Further, Dr. Karim's opinion as to Plaintiff's extremely limited residual functional capacity is inconsistent with Dr. Oza's findings and opinion, with the medical advisors' opinions, and with the reviewing physicians' opinions. (Tr. 145-52). Under these facts, the Commissioner had an adequate basis for rejecting Dr. Karim's opinion as to Plaintiff's residual functional capacity.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

April 15, 2010.

s/ **Michael R. Merz**<br>United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).